UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| JEROME URBAN, | ) |
| Petitioner, | ) 3:11-cv-00427-HDM-VPC |
| vs. | ) |
| NEVADA, STATE OF, *et al.*, | ) **ORDER** |
| Respondents. | ) |

This is a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 in which petitioner, a state prisoner, is proceeding *pro se*. Before the court is respondents' answer to the petition (ECF #16). Petitioner did not file a reply.

**I. Procedural History and Background**

On November 18, 2004, the State of Nevada charged Urban by information with sexual assault (exhibits to answer, ECF #16, ex. 13).[1] Petitioner was convicted by a jury and sentenced to life imprisonment with the possibility of parole after ten years (ex. #48). The court further imposed a special sentence of lifetime supervision (*id.*).

---

[1] All exhibits referenced in this order are exhibits to respondents' answer to the petition, ECF #16 and are found at ECF #s 17-22.

1    Petitioner appealed and raised one claim to the Nevada Supreme Court: that the district
2 court erred in giving a jury instruction that allowed consideration of petitioner's statements as
3 consciousness of guilt (*see* ex. #66 at 5).  On January 10, 2008, the Nevada Supreme Court affirmed the
4 conviction (ex. #70).

5    On April 9, 2008, petitioner filed a state habeas petition (ex. #s 75, supplemental petition,
6 79).  The state district court denied the petition (ex. #88), and petitioner appealed (ex. #92).  In his
7 appellate brief, petitioner raised four claims of ineffective assistance of counsel: (1) trial counsel failed
8 to object to the removal of potential juror Hunter and failed to remove juror Dodge; (2) trial counsel had
9 a conflict of interest because petitioner was a party to a lawsuit against a group of attorneys–of which
10 his trial counsel was a member–appointed by the court when the local public defender has a conflict
11 ("conflict counsel group"); (3) trial counsel failed to object to prosecutorial misconduct during closing
12 arguments; and (4) trial counsel failed to litigate the imposition of lifetime supervision pursuant to
13 petitioner's conviction for sexual assault (ex. #97).  The Nevada Supreme Court affirmed the district
14 court's denial of the state habeas petition on May 9, 2011 (ex. #100).

15    Petitioner dispatched his federal habeas petition to this court on June 9, 2011 (ECF #1-1)
16 and filed an amended petition on August 16, 2011 (ECF #6).  Petitioner raises four grounds in his
17 amended petition.  Respondents have answered and argue that all four grounds lack merit and that the
18 petition should be denied (ECF #16).

19 **II. Discussion**
20    **A.    Legal Standard**
21    **1. Antiterrorism and Effective Death Penalty Act**
22    28 U.S.C. § 2254(d), a provision of the Antiterrorism and Effective Death Penalty Act
23 (AEDPA), provides the legal standards for this court's consideration of the petition in this case:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --
> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as

        determined by the Supreme Court of the United States; or

        (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

        These standards of review "reflect the ... general requirement that federal courts not disturb state court determinations unless the state court has failed to follow the law as explicated by the Supreme Court." *Davis v. Kramer*, 167 F.3d 494, 500 (9th Cir. 1999). Therefore, this court's ability to grant a writ is limited to cases where "there is no possibility fair-minded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Harrington v. Richter*, 562 U.S. ___, ___, 131 S.Ct. 770, 786 (2011).

        A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Lockyer v. Andrade*, 538 U.S. 63 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and citing *Bell v. Cone*, 535 U.S. 685, 694 (2002).

        A state court decision is an unreasonable application of clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Andrade*, 538 U.S. at 74 (quoting *Williams*, 529 U.S. at 413). The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous; the state court's application of clearly established law must be objectively unreasonable. *Id*. (quoting *Williams*, 529 U.S. at 409).

        In determining whether a state court decision is contrary to federal law, this court looks to the state courts' last reasoned decision. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000). Further, "a determination of a factual

issue made by a State court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

### 2. Ineffective Assistance of Counsel

Ineffective assistance of counsel claims are governed by the two-part test announced in *Strickland v. Washington,* 466 U.S. 668 (1984). In *Strickland*, the Supreme Court held that a petitioner claiming ineffective assistance of counsel has the burden of demonstrating that (1) the attorney made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment, and (2) that the deficient performance prejudiced the defense. *Williams v. Taylor,* 529 U.S. 362, 390-91 (2000) (citing *Strickland,* 466 U.S. at 687). To establish ineffectiveness, the defendant must show that counsel's representation fell below an objective standard of reasonableness. *Id.* To establish prejudice, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* A reasonable probability is "probability sufficient to undermine confidence in the outcome." *Id.* Additionally, any review of the attorney's performance must be "highly deferential" and must adopt counsel's perspective at the time of the challenged conduct, in order to avoid the distorting effects of hindsight. *Strickland,* 466 U.S. at 689. It is the petitioner's burden to overcome the presumption that counsel's actions might be considered sound trial strategy. *Id.*

Ineffective assistance of counsel under *Strickland* requires a showing of deficient performance of counsel resulting in prejudice, "with performance being measured against an objective standard of reasonableness,. . . under prevailing professional norms." *Rompilla v. Beard,* 545 U.S. 374, 380 (2005) (internal quotations and citations omitted). If the state court has already rejected an ineffective assistance claim, a federal habeas court may only grant relief if that decision was contrary to, or an unreasonable application of, the *Strickland* standard. *See Yarborough v. Gentry,* 540 U.S. 1, 5 (2003). There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.*

The United States Supreme Court recently described federal review of a state supreme court's decision on a claim of ineffective assistance of counsel as "doubly deferential." *Cullen v. Pinholster*, 131 S.Ct. 1388, 1403 (2011) (quoting *Knowles v. Mirzayance*, 129 S.Ct. 1411, 1413 (2009)). The Supreme Court emphasized that: "We take a 'highly deferential' look at counsel's performance. . . . through the 'deferential lens of § 2254(d).'" *Id.* at 1403 (internal citations omitted). Moreover, federal habeas review of an ineffective assistance of counsel claim is limited to the record before the state court that adjudicated the claim on the merits. *Cullen*, 131 S.Ct. at 1398-1401.

**B. Ground I**

In ground I of the amended petition petitioner alleges the following: his trial counsel rendered ineffective assistance when he (a) failed to object to the removal of potential juror Hunter; and (b) failed to object to the court's refusal to remove juror Dodge for cause and that © appellate counsel was ineffective for failing to raise these issues on appeal (ECF #6 at 2-4). Respondents argue that the Nevada Supreme Court reasonably held that petitioner's trial counsel was not ineffective during jury selection and that appellate counsel was not ineffective for failing to raise this issue on appeal (ECF #16 at 5-8).

First, with respect to the dismissal of potential juror Hunter, the Nevada Supreme Court considered petitioner's claim that his trial counsel should have challenged the State when it moved to dismiss Hunter for cause. Petitioner claims that Hunter, a fellow Native American, was removed in violation of *Batson v. Kentucky*, 476 U.S. 79 (1986). The purpose of a *Batson* challenge is to ensure that the State does not violate the Equal Protection Clause of the U.S. Constitution's Fourteenth Amendment by using peremptory challenges to remove potential jurors solely on account of their race. *Id.* at 89. The Nevada Supreme Court reasoned that the prosecutor successfully challenged Hunter for cause due to his expressed bias, and thus, no *Batson* violation could have occurred.

Respondents argue the following: the Nevada Supreme Court's conclusion is reasonable and supported by the record. During voir dire, potential juror Hunter expressed concern that he could not be impartial if alcohol was involved in the alleged crime (ex. #35 at 62). Hunter stated that he

1  believes that "the people drinking are the ones at fault," and that he could not impartially consider
2  evidence presented at trial due to his preconceived notions about alcohol (*id*. at 64-65). Hunter
3  consistently maintained that he could not be impartial; thus, the court granted the State's motion to strike
4  him for cause (*id*. at 68-69). The trial court's factual determination that Hunter was biased is entitled
5  to deference under 28 U.S.C. § 2254(e)(1). *Hamilton v. Ayers*, 583 F.3d 1100, 1107 (9th Cir. 2009)
6  (citing *Thompson v. Keohane*, 516 U.S. 99, 111 (1995) (noting requirement that presumptive weight be
7  accorded to a trial court's resolution of factual issues, including juror impartiality, because the resolution
8  of such issues "depends heavily on the trial court's appraisal of witness credibility and demeanor.")).

9          The court agrees that the record demonstrates that the Nevada Supreme Court reasonably
10 determined that the trial court granted the State's motion to strike potential juror Hunter for cause based
11 on his expressed bias and inability to decide petitioner's case impartially and that no *Batson* violation
12 occurred. Accordingly, trial counsel cannot have been ineffective by failing to challenge the State's
13 motion to strike Hunter and appellate counsel cannot have been ineffective by failing to argue this issue
14 on appeal.

15         Second, with respect to trial counsel's failure to move to dismiss juror Dodge for cause,
16 the Nevada Supreme Court considered petitioner's claim that his counsel should have moved to dismiss
17 Dodge because she was a victim of a crime similar to that allegedly committed by petitioner.
18 Respondents again argue that the Nevada Supreme Court's conclusion is reasonable and supported by
19 the record. The Nevada Supreme Court noted that a juror should be removed for cause when she holds
20 views that "would prevent or substantially impair the performance of [her] duties as a juror in
21 accordance with [her] instructions and [her] oath" (ex. #100 at 2-3, quoting *Weber v. State*, 119 P.3d
22 107, 125 (Nevada 2005)). The Nevada Supreme Court discussed that Dodge advised the court of her
23 prior experiences, she was questioned thoroughly by both attorneys and the court as to her potential for
24 bias, and she stated consistently and unequivocally that she could be impartial (ex. 100 at 3, citing *Fields
25 v. Brown*, 503 F.3d 755 (9th Cir. 2007) (recognizing that honesty during voir dire is a critical factor
26 where the issue of implied juror bias arises on collateral review.). The Nevada Supreme Court

concluded that petitioner did not demonstrate that Dodge was biased, and therefore, he failed to demonstrate a reasonable probability of a different outcome at trial had counsel challenged the juror for cause (ex. #100 at 2-3). At the evidentiary hearing for the state habeas petition, trial counsel testified that while he could not recall any specific conversation with petitioner about juror Dodge, there must have been some reason why he did not move to dismiss her from the jury (ex. #86 at 16).

The court agrees that the record demonstrates that the Nevada Supreme Court reasonably determined that petitioner did not demonstrate that Dodge was biased, and therefore, he failed to demonstrate a reasonable probability of a different outcome at trial had counsel challenged the juror for cause. The record reveals that Dodge was forthcoming about being a victim of sexual assault and consistently maintained that the attack was part of her past, she had forgiven her attacker and she could render an impartial decision. Accordingly, trial counsel cannot have been ineffective by failing to move to dismiss Dodge for cause and appellate counsel cannot have been ineffective by failing to argue this issue on appeal. Ground I is denied in its entirety.

**C. Ground II**

In ground II petitioner claims the following: his trial counsel did not remove himself from petitioner's case even though petitioner advised him that he was a plaintiff in a suit against the lawyer's conflict counsel group regarding how the group is paid in violation of his Sixth and Fourteenth Amendment rights (ECF #6 at 5-6).

Respondents argue that the Nevada Supreme Court reasonably concluded that petitioner failed to demonstrate an actual conflict of interest that adversely affected his counsel's performance (ECF #16 at 8).

The Nevada Supreme Court affirmed the district court's denial of this claim, reasoning that the district court found trial counsel credible when he testified that he was unaware that petitioner was a party to the lawsuit (ex. #100 at 4; *see also* ex. #86 at 20-21 (trial counsel's evidentiary hearing testimony that he was not aware that petitioner was a party to the lawsuit)). The Nevada Supreme Court

7

also noted that counsel took petitioner's case to trial and petitioner did not specify how the alleged conflict affected counsel's performance (ex. #100 at 4).

This court agrees that petitioner has not alleged that his trial counsel's performance was affected in any way by the alleged conflict of interest. Moreover, the Nevada Supreme Court reasonably affirmed the district court's determination that trial counsel testified credibly at the evidentiary hearing on the state habeas petition that he was unaware that petitioner was a party to the lawsuit against his conflict counsel group. Accordingly, ground II is denied.

### D. Ground III

In ground III petitioner claims the following: his trial counsel was ineffective by failing to object to prosecutorial misconduct during closing arguments when the State vouched for the veracity of its witnesses (ECF #6 at 7-8). Respondents point out that the Nevada Supreme Court rejected the underlying prosecutorial misconduct claim on direct appeal (ex. #70 at 2) and denied petitioner's claim of ineffective assistance in the state habeas proceeding (ex. #100 at 3-4 (noting that because it had "already concluded that the underlying claim did not demonstrate prejudice sufficient to warrant reversal, appellant necessarily fails to demonstrate prejudice from counsel's failure to object to the prosecutor's statements.")).[2]

In reviewing prosecutorial misconduct claims, the narrow issue the federal habeas court may consider is whether there was a violation of due process, not whether there was misconduct under the court's broad exercise of supervisorial power. *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). It is "not enough that the prosecutors' remarks were undesirable or even universally condemned[,] [t]he relevant question is whether the prosecutor's comments so 'infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Tan v. Runnels*, 413 F.3d 1101, 1112 (9th Cir. 2005) (*quoting Darden*, 477 U.S. at 181). The ultimate question before the court is not whether misconduct denied a fair trial, but whether the state court's resolution of the claim was an unreasonable application

---

[2] A summary denial is considered to be "on the merits" for the purposes of AEDPA deference, even if the state court does not provide reasons for its decision. *Harrington*, 131 S. Ct. at 784-785.

of clearly established federal law under 28 U.S.C. § 2254(d)(1). *Furman v. Wood*, 190 F.3d 1002, 1006 (9th Cir. 1999). The court may consider whether the jury was instructed to decide solely on the basis of the evidence rather than counsel's arguments and whether the state's case was strong. *Id*. (citing *Darden*, 477 U.S. at 182).

Petitioner argues that the State improperly characterized him as a liar during closing arguments (ECF #6 at 8). Respondents acknowledge that the prosecutor made multiple references to the petitioner as dishonest or deceitful (*see* ex. #41 at 51, 59, 64, 65, 68, 69, 70) and stated while discussing the consciousness-of-guilt jury instruction that "[petitioner] knows he is guilty" (*id*. at 56-57, 68). However, they argue that the comments regarding petitioner's credibility were made in the context of summarizing inconsistencies in the various accounts he gave to authorities of what happened the night of the sexual assault (ex. #41 at 51-70). Further, petitioner has not alleged that the prosecutor manipulated or misstated any evidence (ECF #6 at 7-8). Moreover, the trial court instructed the jury that arguments of counsel are not evidence (ex. #39, instruction #6 at p. 7) and that the verdict was to be based only on the evidence produced in court (*id*., instruction #29 at p. 30). Respondents contend that these instructions "significantly limit[] any prejudice caused by the prosecutor's remarks." *Comer v. Schriro*, 480 F.3d 960, 988-989 (9th Cir. 2007) (citing *Furman*, 190 F.3d at 1006). Finally, respondents argue that the evidence of petitioner's guilt was strong (ex. #41 at 56 (summarizing DNA evidence linking petitioner to the sexual assault and photographic evidence from the sexual assault exam)).

The record demonstrates that the prosecutor's comments did not render petitioner's trial fundamentally unfair, in violation of petitioner's Fourteenth Amendment due process rights. The trial court instructed the jury that arguments of counsel are not evidence and that the jury was to base its verdict on evidence presented in court. Moreover, the State presented significant evidence of petitioner's guilt, including the victim's testimony, and the consistency of that testimony, together with the DNA evidence, the location of the bruising on the victim, and the other physical evidence of the sexual assault reflected in the SART exam. Petitioner has not shown that he was prejudiced by trial counsel's failure to object. *See, e.g., Comer*, 480 F.3d at 988-989. Petitioner has failed to demonstrate

that the Nevada Supreme Court unreasonably affirmed the district court's finding that petitioner's counsel did not render ineffective assistance when he did not object to the prosecutor's statements during closing arguments. *See, e.g.*, *United States v. Moreland*, 622 F.3d 1147, 1161-62 (9th Cir. 2010) (holding that prosecutor's statements in closing calling defendant "a liar" were reasonable based on the evidence, and further holding such statements did not affect the outcome of the trial because the government had presented strong independent evidence of the defendant's guilt and the court had instructed the jury that arguments and statements by lawyers were not evidence). Accordingly, ground III is denied.

### E. Ground IV

In ground IV petitioner claims the following: his trial and appellate counsel were ineffective by failing to litigate the imposition of lifetime supervision because the Nevada lifetime supervision statute violates the Double Jeopardy Clause. Further, the lifetime supervision conditions violate his First and Fourteenth Amendment rights to association, privacy, and a free press (ECF #6 at 9-10).

Respondents counter that the Nevada Supreme Court has considered the issue and decided that the imposition of lifetime supervision does not violate the Double Jeopardy Clause and thus does not violate due process. They further argue that the claim that the lifetime supervision conditions are unconstitutional is not yet ripe for review and is unexhausted (ECF #16 at 10-12).

In rejecting petitioner's claim that counsel was ineffective for failing to argue on direct appeal that the lifetime supervision violates the Double Jeopardy Clause, the Nevada Supreme Court concluded that petitioner failed to demonstrate ineffective assistance or prejudice. The Nevada Supreme Court noted that the Double Jeopardy Clause prevents a sentencing court from imposing greater punishment than the legislature intended; it does not prevent a state legislature from imposing cumulative punishments for a single offense. *Nevada Dept. Prisons v. Bowen*, 745 P.2d 697, 699 (Nev. 1987) (citing *Missouri v. Hunter*, 459 U.S. 359 (1983)). Observing that the lifetime supervision statute explicitly provides that it shall be imposed "in addition to any other penalties provided by law" (Nev.

1 Rev. Stat. 176.0931(1)), the Nevada Supreme Court determined that such language evidences the legislative intent that the supervision serve as a cumulative punishment for the underlying offense. Thus, the Nevada Supreme Court held that the district court did not err in denying this claim.

The Double Jeopardy Clause of the Fifth Amendment provides "nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb . . . . " U.S. Const. Amend. V. Among other protections, it "protects against multiple punishments for the same offense." *Ohio v. Johnson*, 467 U.S. 493, 498 (1984) (*quoting Brown v. Ohio*, 432 U.S. 161 (1977)). This protection is designed to ensure that the court's sentencing discretion is confined to the limits established by the state legislature. *Johnson*, 467 U.S. at 499. "Because the substantive power to prescribe crimes and determine punishments is vested with the legislature, the question under the Double Jeopardy Clause whether punishments are 'multiple' is essentially one of legislative intent." *Id.* A federal court is bound by a state court's determination of whether a state legislature intended to prescribe cumulative punishments for a single criminal incident. *See Johnson*, 467 U.S. at 499; *Missouri v. Hunter*, 459 U.S. 359, 368 (1983).

Section 176.0931(1) of the Nevada Revised Statutes provides: "If a defendant is convicted of a sexual offense, the court shall include in sentencing, in addition to any other penalties provided by law, a special sentence of lifetime supervision." In *Palmer v. State*, the Nevada Supreme Court addressed the question of whether lifetime supervision was a direct or collateral consequence of a guilty plea to sexual assault. 59 P.3d 1192 (Nev.2002). In reviewing the legislative history, the court determined that lifetime supervision was intended as a non-punitive tool and as a civil penalty to oversee dangerous sexual predators. *Id.* at 1194. However, the court concluded that lifetime supervision was sufficiently punitive in nature to render it a direct consequence of a guilty plea. *Id.* at 1196. The court noted that lifetime supervision is mandatory and must be imposed in addition to any term of imprisonment, probation, or parole, as a matter of law. *Id.* at 1195, 1197. The court did not conclude that the Nevada legislature intended lifetime supervision to serve as a second punishment for the same crime. *Id.* Accordingly, this court agrees that the imposition of lifetime supervision does not violate petitioner's

constitutional rights and his claim that trial and appellate counsel were ineffective in failing to challenge the lifetime supervision lacks merit.

With respect to petitioner's claim that the conditions of lifetime supervision violate his First and Fourteenth Amendment rights to association, privacy, and a free press, the Nevada Supreme Court declined to rule on this claim because it is not ripe, noting that "[petitioner] is serving a life sentence for his crime, and the specific conditions of lifetime supervision will not be imposed until he is released from parole" (ex. #100 at 6, citing *Palmer*, 59 P.3d at 1194-1195). Nevada law requires a claim to be ripe before judicial relief can be granted. *Doe v. Bryan*, 728 P.2d 443 (Nev. 1986). Respondents point out that because petitioner presented this claim in a procedural context that precludes its consideration on the merits absent special circumstances, this portion of ground IV is unexhausted (ECF #16 at 12, citing *Castille v. Peoples*, 489 U.S. 346, 351(1989)).

This court need not consider whether this portion of ground IV is exhausted because the claim plainly lacks merit. See 28 U.S.C. § 2254(b)(1-2). Petitioner remains incarcerated and the conditions of his lifetime supervision have not been imposed. The constitutionality of the lifetime supervision conditions therefore is not ripe for review, and petitioner's counsel cannot have rendered ineffective assistance by not raising such a claim. *See Gonzales v. Knowles*, 515 F.3d 1006, 1017 (9th Cir. 2008) ("counsel cannot be deemed ineffective for failing to raise a 'meritless claim.'"). Accordingly, this portion of ground IV is denied on its merits, and ground IV is denied in its entirety.

Petitioner has failed to demonstrate ineffective assistance of counsel with respect to grounds I, III and IV and has failed to demonstrate any violation of his constitutional rights with respect to ground II because he has failed to demonstrate that his trial counsel knew of a conflict of interest and failed to remove himself from the case. Accordingly, the petition is denied in its entirety.

**III. Certificate of Appealability**

In order to proceed with an appeal, petitioner must receive a certificate of appealability. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22; 9th Cir. R. 22-1; *Allen v. Ornoski,* 435 F.3d 946, 950-51 (9th Cir. 2006); s*ee also United States v. Mikels*, 236 F.3d 550, 551-52 (9th Cir. 2001). Generally, a

petitioner must make "a substantial showing of the denial of a constitutional right" to warrant a certificate of appealability. *Id.;* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). "The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* (*quoting Slack*, 529 U.S. at 484). In order to meet this threshold inquiry, the petitioner has the burden of demonstrating that the issues are debatable among jurists of reason; that a court could resolve the issues differently; or that the questions are adequate to deserve encouragement to proceed further. *Id.* This court has considered the issues raised by petitioner, with respect to whether they satisfy the standard for issuance of a certificate of appealability, and determines that none meet that standard. The court will therefore deny petitioner a certificate of appealability.

**IV. Conclusion**

**IT IS THEREFORE ORDERED** that the amended petition for a writ of habeas corpus (ECF #6) is **DENIED IN ITS ENTIRETY**.

**IT IS FURTHER ORDERED** that the clerk **SHALL ENTER JUDGMENT** accordingly and close this case.

**IT IS FURTHER ORDERED** that petitioner is **DENIED A CERTIFICATE OF APPEALABILITY.**

Dated this 4th day of April, 2012.

_____
UNITED STATES DISTRICT JUDGE